UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAC HUDSON,                               *
                                          *
            Petitioner,                   *
                                          *
      v.                                  *        Civil Action No. 06-cv-11755-IT
                                          *
SHEILA KELLY,                             *
                                          *
            Respondent.                   *

MEMORANDUM AND ORDER ADOPTING REPORT
AND RECOMMENDATIONS REGARDING PETITION FOR
A WRIT OF HABEAS CORPUS

September 30, 2021

TALWANI, D.J.

Petitioner Mac Hudson is currently serving a life sentence imposed by the Massachusetts

state court after he was convicted of second degree murder in 1997. Petitioner attacks his state

court conviction, asserting violations of due process, ineffective assistance of trial counsel,

violations of the right to present a defense and to confront witnesses, and withholding of

exculpatory evidence. Amended Petition [#50]; see also Mem. of Law in Support of Petition for

Writ of Habeas Corpus ("Mem. in Support of Petition") [#60].

Respondent, Sheila Kelly, Superintendent of the Massachusetts Correctional Institution in

Concord, Massachusetts, [1] where Petitioner is currently housed, opposes the Amended Petition

[#50], arguing that the grounds raised are not contrary to or an unreasonable application of

clearly established Supreme Court precedent or are untimely under the Antiterrorism and

_____

[1] The court takes judicial notice that the superintendent of MCI-Concord, where Petitioner is
currently incarcerated, is now Sheila Kelly and has amended the caption accordingly. See Fed. R.
Civ. P. 25(d).

Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Respondent's Mem. of Law in Opposition to Petition for a Writ of Habeas Corpus ("Opp'n") [#62]; see also Mem. Regarding Unavailability of the Confrontation Clause Claim ("Response") [#75].

The magistrate judge to whom the case was assigned issued two Reports and Recommendations ("First R&R" [#65], "Second R&R" [#76], and, collectively, "the R&Rs"), recommending in the First R&R [#65] that the Amended Petition [#50] be denied except as to the Confrontation Clause claim (for which she allowed further briefing), and recommending in the Second R&R [#76] that the Amended Petition  [#50] be denied as to this claim as well.

Petitioner timely filed written objections to both R&Rs [#65], [#76]. See Objection to First R&R [#68]; Objection to Second R&R [#77]; Mem. of Law in Support of Petitioner's Objections to Magistrate's Report and Recommendation ("Mem. in Support of Objections") [#94].

Following *de novo* review of those portions of the R&Rs to which objections were made, the court ADOPTS both R&Rs [#65], [#72]; OVERRULES Petitioner's Objections [#68], [#77]; and DENIES Petitioner's Amended Petition [#50] for the reasons set forth by the magistrate judge and as discussed further in this memorandum and order.

I.   Legal Standards

   A.   Magistrate Judge's R&Rs

Under 28 U.S.C. § 636(b)(1), a district judge "shall make a de novo determination of those portions of the report . . . or recommendations as to which objection is made." Federal Rule of Civil Procedure 72(b)(3) similarly provides that a district judge reviews *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Both the statute and the Rule provide that the district judge may accept, reject, or modify the recommended disposition;

receive further evidence; or return the matter to the magistrate judge with instructions. 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(3).

    B.  <u>Habeas Review</u>

      An application for a writ of habeas corpus brought by a state prisoner shall not be granted

"with respect to any claim adjudicated on the merits in State court proceedings" unless the

adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States" or (2) "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Where a

state court did not review the federal constitutional claim, there will be no deference to a state

court's resolution of the federal constitutional issue and the habeas court applies *de novo* review.

<u>See</u> <u>Lavallee v. Coplan</u>, 374 F.3d 41, 44 (1st Cir. 2004).

      "A state court determination is 'contrary to' clearly established law if the court applies a

rule that contradicts the governing law set forth by the Supreme Court or confronts a set of facts

that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless

arrives at a result different from [its] precedent." <u>Linton v. Saba</u>, 812 F.3d 112, 122 (1st Cir.

2016) (internal citations and quotations omitted; alteration in original).

      A federal court may also grant the writ if the relevant state court decision "<u>involved an

unreasonable application</u> of . . . clearly established Federal law, as determined by the Supreme

Court of the United States." <u>Williams v. Taylor</u>, 529 U.S. 362, 404-05 (2000) (citing Section

2254(d)(1)) (emphasis in <u>Williams v. Taylor</u>). An "unreasonable application of . . . clearly

established Federal law" occurs when a state court decision "correctly identifies the governing

legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." <u>White v.

Woodall, 572 U.S. 415, 426 (2014). Importantly, a state court does not unreasonably apply clearly established Supreme Court law by simply refusing to extend it "to a context in which the principle should have controlled." Id. at 425 (internal citations and quotations omitted). In other words, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 419-20 (internal quotation and citation omitted). "This is 'meant to be' a difficult standard to meet." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).

## II.  Procedural and Factual Background

Finding no objection to the factual and procedural background set out in the First R&R [#65] at 2-18, the court adopts it in full.

## III. Objections to the R&Rs

In his Objections, [#68], [#77], and Memorandum in Support of Objections [#94], Petitioner repeats all of his arguments from his Memorandum in Support of Petition [#60] and also raises a number of specific objections to the R&Rs that are separate and apart from his Memorandum in Support of Petition [#60]. Because Petitioner has properly objected to the magistrate judge's findings, the court reviews the objections de novo. See Fed. R. Civ. P. 72(b).

### A.  Ground One: Admission of Keil Kimbrough's Recorded Testimony at the Second Trial

In ground one, Petitioner alleges that the trial court violated his right to due process by permitting the prosecution to read Kimbrough's prior recorded testimony from the first trial into the record at the second trial. Amended Pet. 5 [#50]; Mem. in Support of Petition 15-20 [#62];

Mem. in Support of Objections 1-8 [#94].[2]

1. <u>Background</u>

At the first trial, Keil Kimbrough was the primary witness against Petitioner. <u>Commonwealth v. Mac Hudson</u>, 446 Mass. 709, 712, 846 N.E.2d 1149 (2006). He testified that at the time of the shooting, he had known Petitioner for about four years, and on the day of the shooting, April 22, 1989, he was standing on a street corner in Roxbury where he saw Derek Twitty and Marc Jones get shot.[3] <u>Id.</u> He identified Petitioner and his co-defendant as the two men who shot Twitty and Jones. <u>Id.</u>

After Petitioner was convicted at his first trial, his conviction was vacated by the Appeals Court because he was denied an impartial jury, and the Appeals Court ordered a new trial. <u>Id.</u> at 710-11.

Between the first and the second trial, Kimbrough signed an affidavit recanting his testimony from the first trial. <u>Id.</u> at 713. Specifically, he averred that he lied about witnessing the shooting "for some consideration on my then pending case." Kimbrough Affidavit, Ex. N, 97 [#12]. He also averred that he did not identify Petitioner from the photographs shown to him by Boston Police Department officers. <u>Id.</u>

At the second trial, after answering a few preliminary questions, Kimbrough expressed a desire not to testify. <u>Commonwealth v. Hudson</u>, 446 Mass. at 713. The trial court appointed counsel for Kimbrough and Petitioner's co-defendant provided Kimbrough's counsel with an unsigned copy of the affidavit which was similar in substance to the signed one. <u>See</u> Ex. J, 14

---

[2] Because the Supreme Judicial Court ("SJC") denied Petitioner's application for leave to obtain further appellate review ("ALOFAR"), the Appeals Court's decision is the relevant state court decision for habeas review.

[3] Twitty died and Jones survived.

[#12]; Trial Transcript IV, 40-46, 49-50 [#63-5].

The trial judge permitted Kimbrough to exercise his Fifth Amendment right against self-incrimination and deemed him unavailable. Trial Transcript IV, 45-46 [#63-5]. The trial judge permitted Kimbrough's entire testimony from the first trial to be read into the record at the second trial. Commonwealth v. Hudson, 446 Mass. at 714. This included cross examination, which elicited that Kimbrough had a pending criminal charge at the time he came forward with the identifications, and that he sold drugs. Id. at 719. The trial judge also allowed defense counsel to read into the record Kimbrough's substantial criminal record and additional pending charges. Id. at 719-20. Petitioner's counsel did not impeach Kimbrough's testimony with the recantation affidavit. Id. at 719.

2. Reliability

Petitioner asserts first that the recantation affidavit rendered Kimbrough's prior recorded testimony unreliable. Mem. in Support of Objections 2-3 [#94]; Memorandum in Support of Petition 16-17 [#60]. On de novo review, the court adopts in full the magistrate judge's First R&R 25-28, 32-34 [#65] as to this part of ground one.

3. Unavailability

Petitioner asserts that the trial judge erred further by erroneously allowing Kimbrough to assert his Fifth Amendment right at the second trial and thereby making Kimbrough unavailable. Mem. in Support of Objections 3-6 [#94].

The magistrate judge found that the unavailability prong of Petitioner's Confrontation Clause claim was not exhausted in state court proceedings where Petitioner cited to Ohio v.

Roberts, 448 U.S. 56 (1980),[4] only as to the issue of whether Kimbrough's recorded testimony was reliable, Second R&R 5-7, 17-18 [#76], and that the claim was procedurally defaulted because the Appeals Court denied it based on the adequate and independent state procedural rule of waiver. Id. at 21-23. Because the magistrate judge found that this claim was not exhausted and was procedurally defaulted, she reviewed the unavailability ground for cause and prejudice or for a fundamental miscarriage of justice. Id. at 24 (citing Barbosa v. Mitchell, 812 F.3d 62, 67 (1st Cir. 2016)). The magistrate judge found Petitioner, relying on an ineffective assistance of counsel claim to explain why the unavailability argument was not raised on direct appeal, did not show prejudice where he had not raised the same ineffective assistance claim in state court. Id. at 25-26 (citing Lynch v. Ficco, 438 F.3d 36, 46 (1st Cir. 2006)). The magistrate judge also found that Petitioner failed to show that "a failure to consider his claim will work a fundamental miscarriage of justice," id. at 26 (citing Janosky v. St. Amand, 594 F.3d 39, 46 (1st Cir. 2010)), where he failed to make a showing of "actual innocence" supported by new, reliable evidence. Id. at 26 (citing Lee v. Corsini, 777 F.3d 46, 62 (1st Cir. 2015)).

In his Memorandum in Support of Objections [#94], Petitioner objects to the magistrate judge's finding that the issue of unavailability was not exhausted and was procedurally defaulted, arguing: (1) the unavailability claim was "fairly presented" by citing to Ohio v. Roberts in his direct appeal; (2) the Appeals Court understood his appeal to address both reliability and unavailability; (3) and he has made a sufficient showing of actual innocence to excuse procedural

---

[4] Ohio v. Roberts, 448 U.S. 56 (1980) and not Crawford v. Washington, 541 U.S. 36 (2004), provides the applicable clearly established Supreme Court law as to the Confrontation Clause because it was the applicable Supreme Court precedent on July 10, 2000, the date the Appeals Court affirmed Petitioner's conviction. See Likely v. Ruane, 642 F.3d 99, 101-02 (1st Cir. 2011) ("[s]tate court decisions under AEDPA are measured against the Supreme Court's precedents that exist as of the time of the relevant state-court decision") (internal quotation and citation omitted).

default. The court reviews these objections *de novo*.

In Ohio v. Roberts, the Supreme Court identified "two separate ways" that the Confrontation Clause restricts the range of admissible hearsay. 448 U.S. at 65. First, "in the usual case . . . the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Id. Once a witness is shown to be unavailable, "[t]he second aspect operates," requiring a sufficient "indicia of reliability." Id. Petitioner's single citation to Ohio v. Roberts in Petitioner's direct appeal was followed by four paragraphs addressing the "reliability test" and concluding with "[t]he trial court violated the defendant's due process right by admitting this prior recorded testimony without a showing of particularized reliability." Ex. C, Brief and Appendix for Defendant-Appellant, Commonwealth v. Hudson, Appeals Court No. 1998-P-686, 33-35 [#11]. Petitioner did not raise the question posed here, namely whether the trial judge erred in determining that Kimbrough was unavailable. Accordingly, Petitioner has not shown that the issue of unavailability was "fairly presented" in his direct appeal and, thus, it was not exhausted. The court agrees with the magistrate judge that the Appeals Court's cursory mention that the trial court found that Kimbrough was unavailable after he exercised his Fifth Amendment privilege is insufficient to show that the Appeals Court understood Petitioner's direct appeal to raise the issue of unavailability. See Second R&R 7-8, 17-18 [#76].

Petitioner argues next that had Kimbrough's prior recorded testimony been excluded, a jury may have found him not guilty. Mem. in Support of Objections 6-8 [#94]. Petitioner argues that the lack of forensic evidence linking him to the crime, the weakness of the identifications offered by the Commonwealth's witnesses given the witnesses' drug use and criminal histories, and the fact a similar robbery happened within a few months of the shooting, while Petitioner

was incarcerated, provide sufficient evidence of actual innocence to excuse procedural default. A showing of factual innocence, however, should be "supported by new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Lee, 777 F.3d at 62 (internal citations and quotations omitted). All but the evidence of the similar robbery was presented at trial, and the evidence of the similar robbery does not itself suggest factual innocence, as may be the case where the new evidence consists of eyewitness testimony identifies someone other than the defendant as the shooter and accomplice or new physical evidence places the defendant away from the scene during the shooting. As such, this evidence does not excuse procedural default. See also Section III.C (discussing the similar robbery further).

Accordingly, the court fully adopts the First R&R 28-32 [#65] and the Second R&R 13-27 [#76] as to unavailability portion of ground one.

B.   Ground Two: Ineffective Assistance of Trial Counsel

Petitioner bases his ineffective assistance of counsel ground on trial counsel's failure to impeach Kimbrough with the recantation affidavit and to call other witnesses who could have impeached Kimbrough's testimony and his failure to timely notify the Commonwealth of an alibi witness, Petitioner's girlfriend at the time of the shooting. Mem. in Support of Petition 20-24 [#62]; Mem. in Support of Objections 8-12 [#94].

1.   Background

As discussed above, at the second trial, Petitioner's trial counsel did not impeach Kimbrough's testimony from the first trial with the recantation affidavit. The SJC, in reviewing this claim on the appeal from a denied motion for a new trial, found that Petitioner's trial counsel made a strategic choice not to impeach Kimbrough's recorded testimony with the recantation

affidavit even where trial counsel asserted that he would have used the affidavit to impeach Kimbrough if he testified live. Commonwealth v. Hudson, 446 Mass. at 713-23.

Petitioner's girlfriend was on Petitioner's witness list, but was not disclosed as an alibi witness until several days into the second trial, despite a pretrial conference agreement between trial counsel and the Commonwealth that Defendant was obligated to provide sufficient notice to the Commonwealth before an alibi witness could be called. Id. at 724-25. Trial counsel failed to provide the agreed-upon notice, and the trial court barred him from calling the alibi witness. Id.

2. Analysis

The magistrate judge detailed the deferential standard applicable on an ineffective assistance of counsel and the SJC's detailed review of the concerns that counsel may have had about what evidence would be presented to rebut the Kimbrough affidavit. First R&R 34-42 [#65]. The court has reviewed the ineffective assistance of counsel arguments *de novo* and adopts in full the magistrate judge's First R&R [#65] as to the ineffective assistance of counsel claim. [5]

---

[5] Defendant insists that any "tactical decision" by trial counsel not to use the affidavit to impeach Kimbrough's testimony from the first trial would have been "manifestly unreasonable" where trial counsel testified that he "could not conceive of not using the recantation affidavit" had Kimbrough testified further at the second trial. That conclusion is not obvious. If trial counsel believed that Kimbrough's affidavit recanting his earlier testimony, reportedly procured in prison and under duress, was false, the rules of professional conduct would have limited trial counsel's offering of the affidavit as evidence. See Mass. Rule of Professional Conduct 3.3(a)(3) ("A lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false, except as provided in Rule 3.3(e) [regarding a criminal defendant's own testimony] . . . A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false."). This rule would not have precluded trial counsel from using the affidavit (but not introducing it) to cross-examine and impeach Kimbrough if he had testified further at the second trial.

C. <u>Ground Three Objection: Whether Evidence of a Similar Robbery Should Have Been Presented to the Jury</u>

In ground three, Petitioner argues the trial court erred in excluding evidence of a purportedly similar robbery which took place around the same time and in the same general vicinity of the shooting and where Petitioner, who was incarcerated at the time of the second robbery, was identified by the victim as one of the perpetrators. Mem. in Support of Petition 24-27 [#60]; Mem. in Support of Objections 12-16 [#94].

1.  Background

The trial judge found that the other robbery took place three quarters of a mile away from the shooting and that three and a half months separated the incidents. Ex. KK, 5, 9-10 [#48]; Ex. 5, 14-15 [#63]. The trial judge also noted that the other robbery was not drugs, but was for a gold chain, and found that the similarities were too weak to warrant admission of this evidence. Ex. 5, 14-15 [#63].

2.  Analysis

Petitioner argues that the <u>First R&R</u> [#65] did not "address the numerous substantial similarities between the robberies," and instead only addressed the ways the robberies were different in finding that the state court did not apply a rule contrary to or an unreasonable application of federal law." Mem. in Support of Objections 16 [#94]. He contends that the trial judge and Appeals Court's determination "that the two incidents were not similar is an 'unreasonable determination of the facts'" in violation of Section 2254(d)(2). Mem. in Support of Petition 27 [#60]. The trial court and the Appeals Court did not ignore the similarities between the robberies, they found that the similarities, in light of significant differences, were insufficient to satisfy the relevance requirement necessary for the introduction of this evidence. The object of the second robbery was a gold chain, this robbery was for drugs; the robberies happened about

three months apart; and the robberies happened three quarters of a mile apart; also, the similarities Hudson highlighted were found to be common, *e.g.*, the phrase both robbers used ("kick it in"), and the number of robbers (two) and their generic size/description. These similarities are not so overwhelming as to negate the differences. The Appeals Court, in affirming the exclusion of this evidence, did not unreasonably apply Chambers v. Mississippi, 410 U.S 284, 294 (1973) or United States v. Scheffer, 523 U.S. 303, 308 (1998). After *de novo* review, the court agrees and fully adopts the First R&R 42-50 [#65] as to ground three.

   D.   Ground Four Objection: the Trial Court's Exclusion of Petitioner's Alibi Witness

      1.   Background

   In ground four, Petitioner contends that the trial court's exclusion of his girlfriend's alibi testimony deprived him of his right to present a defense under the Sixth and Fourteenth Amendments. Mem. in Support of Petition 27-31 [#62]; Mem. in Support of Objections 16-21 [#94]. Petitioner also argues that *de novo* review applies to this ground because the Appeals Court did not reach the constitutional claim. Mem. in Support of Objections 20 [#94].

   As noted above, the trial judge excluded the alibi testimony because Petitioner's trial counsel failed to comply with a pretrial conference agreement which set out required notice to opposing counsel for witnesses. First R&R 54-55 [#65].

      2.   Analysis

   Petitioner argues the magistrate judge erred in concluding she did not need to review *de novo* the trial court's decision to exclude Petitioner's alibi witness.

   Trial counsel signed a pretrial conference agreement setting out when witnesses would be disclosed; later he expressed a belief he had not signed such an agreement; and, in violation of the pretrial agreement, asked to present an alibi witness, making the request to the trial court the

Friday before the Monday the Commonwealth intended to finish presenting its case.[6]

Commonwealth v. Hudson, 2000 WL 1477124, at *1-2. Petitioner raised the issue of whether excluding his alibi witness deprived him of his right to present a defense under the Sixth and Fourteenth Amendments in his direct appeal, and while the Appeals Court's decision denying relief did not cite to federal constitutional law, the magistrate judge found the decision's analysis rested on federal constitutional grounds because it referenced a Massachusetts state court decision, Commonwealth v. Porcher, 26 Mass. App. Ct. 517, 518, 529 N.E.2d 1348 (1988), which itself relied on federal constitutional grounds. First R&R 51-52 [#65]. Accordingly, the magistrate judge found that *de novo* review was not warranted and AEDPA review was appropriate. Id. at 50-55.

Petitioner does not quarrel with the magistrate judge's statement of the law, that "reference to state court decisions that themselves deal with federal constitutional issues may be sufficient to trigger AEDPA's heightened deference." Clements v. Clarke, 592 F.3d 45, 54 (1st Cir. 2010) (citing DiBenedetto v. Hall, 272 F.3d 1, 7 (1st Cir. 2001) (emphasis in original)). Instead, he argues that Clements requires an explanation of why, in this particular case, citation to Commonwealth v. Porcher triggered AEDPA review.

Porcher presents similar facts to Petitioner's case: without prior notice, trial counsel for the defendant sought to present an alibi witness, and was barred from doing so because calling an alibi witness at a late stage violated a pretrial conference report. See also Mass. R. Crim. P. 14(b)(1) and (e)(2)(B). Porcher cites to the relevant Massachusetts criminal procedure rule permitting the exclusion of an alibi witness in these circumstances, Mass. R. Crim. P.

---

[6] Petitioner's girlfriend at the time of the robbery was not called to testify at the first trial. Mem. in Support of Objections 17 [#94].

14(b)(1)(D), and then addresses the defendant's Sixth Amendment challenge, explaining that the Supreme Court in <u>Taylor v. Illinois</u>, 484 U.S. 400, 409-11 (1988), held that while the Sixth Amendment provides the right of an accused to present witnesses in his defense, that right is subject to a measure of procedural control. <u>Porcher</u>, 26 Mass. App. Ct. at 518-19. The Appeals Court in Petitioner's case cited to the pages of <u>Porcher</u> that address the Supreme Court's Sixth Amendment analysis of the exclusion of an alibi witness and the circumstances in which it may be appropriate.

"A state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA. When presented with such unadjudicated claims, the habeas court reviews them <i>de novo</i>." <u>Fortini v. Murphy</u>, 257 F.3d 39, 47 (1st Cir. 2001). However, the First Circuit has rejected an "inflexible rule" which would require <i>de novo</i> review if "busy state judges" did not provide case citations to federal law because such a rule would "elevate form over substance." <u>Id.</u> at 53. Here, the Appeals Court relied on <u>Porcher</u> in response to Petitioner's challenge that excluding the alibi witness violated his Sixth Amendment right to present a defense.[7] The court is persuaded that the Appeals Court did indeed address Petitioner's Sixth Amendment claim by citing to <u>Porcher,</u> which in turn cites <u>Taylor v. Illinois</u> and the appropriate federal constitutional grounds, and that the Appeals Court's decision is "sufficient to trigger AEDPA's heightened deference." <u>Clements</u>, 592 F.3d at 54.

---

[7] The court in <u>Porcher</u> explained that limits on alibi witnesses could be appropriate where defense counsel failed to timely identify the witness and that the need for the "procedural control" described in <u>Taylor v. Illinois</u> is particularly important for alibi witnesses "because testimony that the defendant was elsewhere when the crime occurred is so easily fabricated" and thus "[f]airness requires a chance to check out the bona fides of an alibi witness." <u>Porcher</u>, 26 Mass. App. Ct. at 519 (citing <u>Taylor v. Illinois</u>, 484 U.S. at 409-11).

E.  Ground Five Objection: Whether the Magistrate Judge's Erred in Relying on *Beldotti*

In ground five, Petitioner contends that "the trial court's decision while empaneling the jury to change the number of jurors to be seated unfairly prejudiced" his use of peremptory challenges in violation of his due process rights. Mem. in Support of Petition 32-34 [#60]; Mem in Support of Objections 21-24 [#94].

1.  Background

At the beginning of jury selection, the trial judge indicated he would empanel 16 jurors and that Petitioner would have 16 peremptory challenges. Commonwealth v. Hudson, 2000 WL 1477124, at *1. Two days into jury selection, the trial judge changed course and decided to only empanel 15 jurors, and when the jury was selected, Petitioner had five unexercised peremptory challenges. Id.

2.  Analysis

Petitioner argues that the magistrate judge erred in relying on Commonwealth v. Beldotti, 409 Mass. 553, 567 N.E.2d 1219 (1991), in support of her finding that the trial court did not violate Petitioner's due process rights when it changed the number of jurors to be seated, thus limiting his use of his peremptory challenges. He argues this was an error because, unlike trial counsel for the defendant in Beldotti, Petitioner's trial counsel objected when the trial court announced that it would change the number of jurors from the originally announced 16 to 15 and stated as part of his objection that had he known there would be only 15 jurors, he would have used his peremptory challenges differently. Mem. in Support of Objections 23 [#94].

In Beldotti, the SJC first found that the trial court "violated no principle of State law" in changing the number of jurors from 16 to 14, where state law required only 12, and where the defendant received 14 peremptory challenges and had some unexercised challenges when the

jury was picked. 409 Mass. at 560-61. The SJC then explained that "in the absence of a showing of unfairness, no Federal due process principle was violated." Id. at 561 (citing Ross v. Oklahoma, 487 U.S. 81, 89 (1988) ("the [due process] 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides")).

Petitioner is correct that Beldotti applied a more deferential standard to the trial court's decision because the defendant had neither objected at trial to the change in the number of jurors nor indicated he would have used his peremptory challenges differently had he understood that only 14 jurors would be picked. Id. at 561 ("in the absence of objection, we test the defendant's argument under G.L. c. 278, § 33E, to see whether he has shown a substantial likelihood of a miscarriage of justice. . . . He has shown neither unfairness nor any indication of a miscarriage of justice."). However, the operative standard for assessing whether there was a due process violation is the one articulated in Ross v. Oklahoma, namely, did the trial court violate a principle of state law in changing the number of jurors. 487 U.S. at 90-91. The Appeals Court found it had not, and the magistrate judge found that this was an application of a rule that comports with Ross and, thus, not contrary to or an unreasonable application of federal constitutional law under § 2254(d). First R&R 59-60 [#65]. The court, after reviewing this issue de novo, agrees.

Peremptory challenges are granted to fulfill the mandate of the Sixth Amendment that a defendant is entitled to a fair and impartial jury. However, peremptory challenges are not guaranteed by the Constitution. Ross, 487 U.S. at 88 ("We have long recognized that peremptory challenges are not of constitutional dimensions."). Instead, peremptory challenges "are but one state-created means to the constitutional end of an impartial jury and a fair trial. This Court repeatedly has stated that the right to a peremptory challenge may be withheld without impairing

16

the constitutional guarantee of an impartial jury and a fair trial." Georgia v. McCullom, 505 U.S. 42, 57 (1992). Relatedly, denial of peremptory challenges *may* violate the Sixth Amendment where the defendant is deprived of his constitutional right to an impartial jury, but the Supreme Court has "reject[ed] the notion that the loss of a peremptory challenge [automatically] constitutes a violation of the constitutional right to an impartial jury." Ross, 487 U.S. at 88.

Petitioner does not argue he was denied an impartial jury, nor does he argue that changing the number of jurors violated Massachusetts state law. Instead, he argues he was denied the benefits of Massachusetts law on peremptory challenges and given fewer peremptory challenges than he expected. By law, he was entitled to 12 jurors, he received 15 jurors and was entitled to 15 peremptory challenges, which he also received. See Mass. R. Crim. P. 20(c)(1). The Appeals Court's decision that this did not violate his due process rights was neither contrary to nor an unreasonable application of Ross despite Petitioner's claim that he may have used his peremptory challenges differently had he known the trial judge would seat 15 instead of 16 jurors. In Ross, hypothetical arguments were made about how the jury would have been different if the defendant had not been forced to use a peremptory challenge to remove a juror who should have been removed for cause, and that this mandated reversal. The Supreme Court rejected this argument: "Although we agree that the failure to remove [a juror] [for cause] may have resulted in a jury panel different from that which would otherwise have decided the case, we do not accept the argument that this possibility mandates a reversal." Ross, 487 U.S. at 87.

In Ross, the trial court's error in not striking a juror for cause required the defendant to expend a peremptory challenge he would not have otherwise used. Id. However, because using that peremptory challenge in response to the error was required by Oklahoma law, the defendant was deprived neither an impartial jury nor of "any interest provided by the State." Id. at 91. Here,

the trial court changed the number of jurors, which reduced the number of peremptory challenges Petitioner was entitled to, and, had he known this, Petitioner may very well have used his peremptory challenges differently, but that does not amount to a violation of state law and, as a result, fails to amount to a violation of Petitioner's due process rights as articulated in Ross. Thus, the decision by the Appeals Court was neither contrary to nor an unreasonable application of federal constitutional law. For these reasons, the court adopts in full the First R&R 56-60 [#65] as to ground five.

F.   Ground Six Objection: Whether the Magistrate Judge Erred in Finding the Federal Nature of this Ground for Relief was Not Presented to the SJC

In ground six, Petitioner argues that the trial court erred in refusing to instruct the jury as to the possibility that a witness made a good faith, but mistaken identification. Because identification of the Petitioner as one of the assailants was the central issue at trial, Petitioner contends that failing to give the jury the good faith, mistaken identification instruction "'so infected the entire trial that the resulting conviction violate[d] due process.'" Mem. in Support Petition 26 [#60] (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

1.   Background

At trial, Petitioner requested the good faith, mistaken identification instruction; the trial court declined to give this specific instruction, but instructed the jury at length about its role in considering the "credibility of each identification witness," that the Commonwealth had the burden of proving the identify of the Petitioner as one of the assailants, that the jury should consider whether the identifications made by witnesses were "products of their own recollections," and whether any of the witnesses "ever tried and failed to make an identification of the Defendant, or made an identification that was inconsistent with the identification that such witness made at trial." Trial Transcript, Ex. 10 123-26 [#63-10].

18

2. Analysis

Petitioner argued to the Appeals Court that the trial court's decision to not give the good faith, mistaken identification instruction upon his trial counsel's request violated his federal due process rights. Here he argues that the magistrate judge erred in finding that he did not fairly present this claim to the SJC in his ALOFAR. Mem. in Support of Objections 24-25 [#94]. However, the magistrate judge evaluated this ground for habeas relief under both *de novo* review, as if the Appeals Court had not addressed the merits of the federal constitutional claim, and under Section 2254(d)(1) review. The court, reviewing this ground *de novo* adopts in full the magistrate judge's recommendation as to the sixth ground for relief. First R&R 60-68.

G. <u>Ground Seven: Improper Limitation of Cross Examination</u>

Petitioner asserts that the trial judge violated his due process rights by improperly limiting his cross examination of a witness, Derma Hughes, concerning a conversation she overheard between a prosecutor and one of the testifying eyewitnesses, Dwayne Moody. Mem. in Support of Petition 36-37 [#60]; Mem. in Support of Objections 27-28 [#94].

1. Background

A week before the first trial, Moody failed to identify Petitioner at a preliminary hearing. <u>Commonwealth v. Hudson</u>, 2000 WL 1477124, at *2. However, at the first trial, he identified Petitioner as one of the assailants and explained that his failure to identify Petitioner at the preliminary hearing was because Petitioner was wearing glasses at the preliminary hearing and those glasses covered a distinctive mark or scar on Petitioner's face. <u>Commonwealth v. Hudson</u>, 446 Mass. at 712-13. Petitioner was not wearing glasses at the first trial, and Moody testified that he was able to identify him because he could see the mark or scar. <u>Id.</u> At the second trial, Petitioner sought to ask Derma Hughes about a conversation she overheard during the first trial

during which a prosecutor identified Petitioner as the person Moody was supposed to identify.

Commonwealth v. Hudson, 2000 WL 1477124, at *2.

The trial judge prevented Petitioner from impeaching Moody's identification by eliciting this testimony from Derma Hughes. Id. The trial judge barred the line of questioning as hearsay. Id. The Appeals Court concluded that the trial court erred in excluding the cross examination because the conversation between Moody and the prosecutor was not being offered for its truth and was not, therefore, hearsay. Id. Nevertheless, the Appeals Court concluded the error was harmless beyond a reasonable doubt. Id.

2.   Analysis

Petitioner's Memorandum in Support of Objections [#94] raises no new objections as to the improper limitation of cross examination ground for habeas relief and instead relies on the arguments from the Memorandum in Support of Petition [#60], namely that the Appeals Court erred in finding this error harmless beyond a reasonable doubt under Chapman v. California, 386 U.S. 18, 24 (1967). The court has reviewed the arguments concerning the harmless error analysis de novo and adopts in full the magistrate judge's First R&R 68-72 [#65] as to ground seven.

H.   Ground Eight Objection: Brown's in-Court Identification

Petitioner argues in ground eight that, by refusing to declare a mistrial following a surprise in-court identification of the Petitioner, the trial court denied Petitioner a fair trial under the Due Process Clause. Mem. in Support of Petition 38-40 [#60]; Mem. in Support of Objections 28-31 [#94].

1.   Background

During Petitioner's first trial, the Commonwealth called Larry Brown, and Brown identified Petitioner's co-defendant as one of the assailants, but did not identify Petitioner.

Commonwealth v. Hudson, 446 Mass. at 712-13. At the second trial, the Commonwealth informed Petitioner's trial counsel that it would not seek to an elicit an identification of the Petitioner from Brown. Trial Transcript, Vol. VI, 8 [#63-7]. However, when the prosecution asked Brown who he saw get out of the car on the day of the shooting, Brown responded "[t]he two gentlemen over there," indicating Petitioner and his co-defendant who were sitting at the defense table. Trial Transcript Vol. VII, 7 [#63-8]. Petitioner's trial counsel immediately moved for a mistrial and the trial court denied the motion. Id. at 7-10.

On cross examination, Brown's testimony was impeached as he acknowledged his daily drug use and his numerous prior convictions and pending cases. Trial Transcript, Vol. VII, 40-44 [#63-8]. A police officer also testified that Brown asked for a deal on a pending case in exchange for giving information about the assailants. Trial Transcript Vol. VIII, 135 [#63-9].

On direct appeal, Petitioner presented this ground as a due process violation and the Appeals Court rejected the claim on the basis that Petitioner "failed to show that the identification was unnecessarily suggestive, or that prosecutorial misconduct was behind the identification." Commonwealth v. Hudson, 2000 WL 1477124, at *3 (citing Commonwealth v. Gordon, 422 Mass. 816, 846-47 (1996)).

1.   Analysis

Petitioner argues that the surprise in-court identification of him by Brown violated his due process rights. The magistrate judge found that there was no clearly established federal law addressing "a witness' first-time identification of a defendant in court without a previous suggestive pretrial identification." First R&R 78 [#65]. The magistrate judge also identified the Supreme Court case law addressing suggestive pretrial identifications and held that, even if these cases applied to Brown's in-court identification, "the wide variance between these cases and the

circumstances of Brown's identification of petitioner for the first time at trial establish that the appeals court's decision was not an unreasonable application of such law." Id. at 79. Petitioner argues the magistrate judge erred by finding the circumstances of this in court identification distinguishable from the circumstances set forth in applicable Supreme Court case law. Mem. in Support of Objections 28-29 [#94]. The court reviews this objection *de novo*.

Under the identified Supreme Court cases, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198 (1972) (upholding admission of pretrial identification testimony and finding "no substantial likelihood of misidentification" in a one man, show up identification at station house which, although suggestive, was reliable). Thus, "reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 99-102 (1977). The determination of whether an identification is sufficiently reliable to be admissible under the Due Process Clause is made on a case-by-case assessment and depends on the circumstances of the identification, the accuracy of the description, the distance between the witness and the suspect when the identification was made, and that these factors are to be weighed against the suggestive circumstances. Id.  at 114.

Here, the court agrees with Petitioner that the identification was unreliable and should not have been admitted. Petitioner was sitting at the defendants' table when he was first identified by Brown. The shooting took place in 1989 and this in-court identification happened eight years later, in 1997. Brown had not identified Petitioner during the first trial as one of the people involved in the shooting. Tr. VII-21-22 [#63-9]. Brown testified he had never seen Petitioner prior to the day of the shooting. Tr. VII-14 [#63-9]. Finally, Brown testified about his daily drug, his criminal convictions, and the fact he asked police for help with pending charges before

22

providing information about the men involved in the shooting. Tr. VII-25-28, VII-40-45 [#63-9]. Weighing the fact Petitioner was at the defendant's table when identified against the factors undermining the credibility of his identification, the court finds the testimony unreliable.

The testimony, however, was not allowed in over an objection, but instead, was blurted out by the witness. Petitioner's counsel sought a mistrial (which was denied) but did not ask to strike the testimony. Most importantly, this identification was not offered to the jury as a pre-trial identification entitled to some weight because of its proximity to the time of the events in question, but was instead occurred in real time before the jury (which could take note itself of the suggestive circumstance of the identification), and Brown was then subject to cross-examination that allowed the jury to determine this lack of reliability. Thus, even assuming the Supreme Court law cited by Petitioner applies to a first-time in court identification, the court, after reviewing the ground *de novo* finds no violation of Petitioner's due process rights as to ground eight.

I.   Ground Nine: Prosecution's Failure to Turn Over Exculpatory Evidence

1.   Background

Petitioner claims that the prosecutor failed to turn over exculpatory information consisting of a letter from Derek Tyler to the prosecution which purportedly included letters from Kimbrough to Tyler explaining that Kimbrough testified falsely against Petitioner at the first trial. Mem. in Support of Petition 40-41 [#60]; Mem. in Support of Objections 31-32 [#94]. Petitioner argues that the SJC's denial of the claim was an unreasonable application of clearly established law under Brady v. Maryland, 373 U.S. 87, 94 (1963).

The trial prosecutor had no memory of receiving the letter and the letter was not in the file from this case. Petitioner did not attach the Tyler letter to his motion for a new trial. The SJC

determined Tyler did not send the letters. Commonwealth v. Hudson, 446 Mass. at 710, n.2.

2.   Analysis

Petitioner's Memorandum in Support of Objections [#94] raises no new objections concerning the Tyler letter and instead relies on the arguments from the Memorandum in Support of Petition [#60], namely that the SJC's denial of the claim was an unreasonable application of Brady, 373 U.S. 87, because the  assumption "that Hudson was not prejudiced by the failure to turn over the letters," was unreasonable, Mem. in Support of Objections 34 [#94], and that the SJC also made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). The court has reviewed this ground de novo and adopts in full the magistrate judge's First R&R 79-88 [#65] as to ground nine.

J.   Ground Ten: Other Exculpatory Evidence

1.   Background

In ground ten, Petitioner contends that the Appeals Court's 2015 decision that Petitioner was not prejudiced by the failure to disclose three categories of exculpatory material was contrary to or an unreasonable application of Brady, 373 U.S. 87. Mem. in Support of Petition 41-53 [#60]; Mem in Support of Objections 32-44 [#94]. There are three categories of exculpatory material at issue in ground ten: (1) documents relating to efforts by Toya Kimbrough (Keil Kimbrough's sister) "to secure employment with the District Attorney's office," Record Appendix for Defendant, Ex. XX, 198-200 [#48]; (2) two "police reports relating to [Luis] Andrade," a person Petitioner argues was a suspect in the shooting, id. at 170-71; and (3) police reports and notes relating to the early stages of the investigation regarding when and how Petitioner was identified as one of the suspects in the investigation. Id. at 201-06.

The Appeals Court considered and rejected all three Brady claims on their merits.

24

Commonwealth v. Hudson, 2015 WL 2037025, at *2-3.

    2.   Analysis

Petitioner's Memorandum in Support of Objections [#94] raises no new objections concerning the three categories of purportedly exculpatory evidence and instead relies on the arguments from the Memorandum in Support of Petition [#60], namely that the SJC's denial of the claim was an unreasonable application of Brady, 373 U.S. 87, and that the SJC also made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2)." Mem. in Support of Objections 42-44 [#94]. The court has reviewed this ground de novo and adopts in full the magistrate judge's First R&R 88-99 [#65] as to ground ten.

IV. Conclusion

For the foregoing reasons, Petitioner's Objections [#68] to the first Report and Recommendation [#65] are OVERRULED. The first Report and Recommendation [#65] is ACCEPTED and ADOPTED. Petitioner's Objections [#77] to the Second R&R [#76] are OVERRULED. The second R&R [#76] is ACCEPTED and ADOPTED. Petitioner's Amended Habeas Petition [#50] is DENIED.

    IT IS SO ORDERED.


Date: September 30, 2021                     /s/ Indira Talwani
                                            United States District Judge